**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                                                        :
GIZMODO MEDIA GROUP, LLP,                               :   Case No. 17-cv-3566 (DLC)
                                                        :
                      Plaintiff,                        :
                                                        :
          vs.                                           :
                                                        :
DEPARTMENT OF JUSTICE,                                  :
                                                        :
                      Defendant.                        :
                                                        :
------------------------------------------------------------X


**MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION**
**FOR SUMMARY JUDGMENT AND IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

David A. Schulz
Jacquelyn N. Schell
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY  10022
schulzd@ballardspahr.com
schellj@ballardspahr.com
Telephone: 212.850.6103
Facsimile: 212.223.1942

*Counsel for Plaintiff*
*Gizmodo Media Group, LLC*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................1

STATEMENT OF FACTS ............................................................................................4

      A.      March 2017 Presidential Disclosures.....................................................4

      B.      Testimony of James Comey ....................................................................6

      C.      FOIA Request at Issue ...........................................................................7

      D.      Declassification of the Nunes Memorandum and Page Documents .......................8

      E.      Subsequent Presidential Disclosures.....................................................9

STANDARD OF REVIEW ..........................................................................................11

ARGUMENT ...............................................................................................................13

A *GLOMAR* RESPONSE IS UNJUSTIFIED IN LIGHT OF THE OFFICIAL
ACKNOWLEDGEMENTS OF SURVEILLANCE BY THE PRESIDENT ...............................13

      A.      The Presidential Disclosures Specifically Acknowledge Surveillance
              of *Candidate Trump and His Campaign*................................................13

      B.      DOJ Cannot Interpose a *Glomar* Response to Avoid Disclosing
              Officially Acknowledged Information ..................................................14

CONCLUSION...........................................................................................................18

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*ACLU v. CIA*,
    710 F.3d 422 (D.C. Cir. 2013) .................................................................. *passim*

*ACLU v. Office of Director of Nat'l Intelligence*,
    2011 WL 5563520 (S.D.N.Y. Nov. 15, 2011) ....................................................12

*Azmy v. DOD*,
    562 F. Supp. 2d 590 (S.D.N.Y. 2008)...............................................................12

*Campbell v. DOJ*,
    164 F.3d 20 (D.C. Cir. 1998) .........................................................................12

*Carney v. DOJ*,
    19 F.3d 807 (2d Cir. 1994).............................................................................11

*Dep't of Air Force v. Rose*,
    425 U.S. 352 (1976)......................................................................................11

*DOJ v. Julian*,
    486 U.S. 1 (1998).........................................................................................11

*DOJ v. Reporters Comm. for Freedom of the Press*,
    489 U.S. 749 (1989)..................................................................................11, 12

*Florez v. CIA*,
    829 F.3d 178 (2d Cir. 2016)...........................................................11, 12, 14, 15

*Fox News Network, LLC v. Dep't of Treasury*,
    739 F. Supp. 2d 515 (S.D.N.Y. 2010)...............................................................11

*Grand Cent. P'ship, Inc. v. Cuomo*,
    166 F.3d 473 (2d Cir. 1999)...........................................................................11

*Halpern v. FBI*,
    181 F.3d 279 (2d Cir. 1999)...........................................................................12

*James Madison Project v. DOJ*,
    --- F. Supp. 3d ---, 2018 WL 4283562 (D.D.C. Sept. 7, 2018)...............................16

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) .......................................................................12

*N.Y. Times Co. v. DOJ*,
    138 F. Supp. 3d 462 (S.D.N.Y. 2015)....................................................................4

*N.Y. Times Co. v. DOJ*,
    235 F. Supp. 3d 522 (S.D.N.Y. 2017)..................................................................12

*N.Y. Times Co. v. DOJ*,
    756 F.3d 100 (2d Cir. 2014).......................................................................... *passim*

*N.Y. Times Co. v. DOJ*,
    872 F. Supp. 2d 309 (S.D.N.Y. 2012).....................................................................4

*Smith v. CIA*,
    246 F. Supp. 3d 28 (D.D.C. 2017) ...............................................................16, 17

*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973) .............................................................................12

*Wilner v. NSA*,
    592 F.3d 60 (2d Cir. 2009)..............................................................................14, 15

*Wilson v. CIA*,
    586 F.3d 171 (2d Cir. 2009)...................................................................................6

## Statutes & Other Authorities

Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801 et seq........................................... *passim*

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 ...................................................... *passim*

Plaintiff Gizmodo Media Group, LLC ("Gizmodo") respectfully submits this memorandum in opposition to the motion for summary judgment by defendant Department of Justice ("DOJ") and in support of its cross-motion for summary judgment.

## PRELIMINARY STATEMENT

The President's subordinates in this FOIA case are trying to rewrite his public statements. They proceed as if the President had made a carefully-cabined declaration revealing government surveillance of him personally, rather than an expansive disclosure of government surveillance of the Trump campaign. But the President's words have meaning. DOJ cannot hide from the clear acknowledgment of campaign-wide surveillance contained in the President's March 2017 disclosures and his continuing assertions of broad, government-authorized surveillance of the Trump campaign.

The President of the United States publicly stated that national security surveillance of then-candidate Trump and his campaign's "race for president" was conducted by the prior administration. DOJ does not dispute that the President's tweets and comments about this surveillance constitute official acknowledgment that the surveillance occurred. It urges only that the Court should give no deference to the plain meaning of the President's disclosures, even as it argues that his pronouncements on national security must be accorded substantial deference. The Government cannot have it both ways.

The plain language of the President's multiple tweets and subsequent comments about the target and scope of the government's surveillance is not limited to personal surveillance of candidate Trump at Trump Tower—surveillance about which DOJ has no records. Rather, the President disclosed a broader scope of surveillance, as he confirmed in a televised interview that

described surveillance conducted on him, his campaign, and his political operatives.  The President's initial tweets acknowledged that the government had been "'wire tapping' *a race for President*," and he has repeatedly reaffirmed—as recently as last month—that "they were surveilling *my campaign*."[1]

To be sure, one of the President's tweets referenced "'wires-tapped' in Trump Tower just before the victory," but elsewhere the President has repeatedly asserted the existence of a broader surveillance effort targeting his political operation in advance of the election.  Given the official presidential acknowledgment of this surveillance, DOJ cannot stand behind a *Glomar* non-response and refuse to say whether records of such campaign-wide surveillance even exist, particularly given the President's continuing public insistence that such surveillance did occur.  Gizmodo's FOIA request seeks nothing more than records reflecting information that has been officially acknowledged—surveillance of candidate Trump and his campaign before the 2016 election.  Whether or not specific FOIA exemptions would ultimately permit responsive records to be withheld, DOJ has a legal obligation to disclose, and the Nation has a right to know, whether any records of the asserted campaign surveillance actually exist.

In straining to defend its *Glomar* response, DOJ is forced to resort to linguistic gymnastics.  It concedes official acknowledgment of wiretapping of candidate Trump in Trump

---

[1] Donald J. Trump (@realDonaldTrump), Twitter (Mar. 4, 2017, 5:49 am), https://twitter.com/realdonaldtrump/status/837993273679560704 (emphasis added);

Decl. of Jacquelyn N. Schell, executed October 9, 2018 ("Schell Decl."), Ex. 1 ("Daily Caller Interview") (*Full Transcript of Trump's Oval Office Call with the Daily Caller*, Sept. 5, 2018), available at https://dailycaller.com/2018/09/05/full-transcript-trump-daily-caller-interview/ (emphasis added).

Tower and discloses that no records of any such surveillance exist.[2]  But then, DOJ contends it can refuse to confirm or deny the existence of any records of the other campaign surveillance disclosed by the President because his acknowledgments of that surveillance do not identify "[specific] surveillance target[s]" or reveal "specific FISA-authorized warrants."  DOJ Mem., Dkt. 58 ("Def. Mem."), at 20.[3]  While this absence of an official acknowledgment of the specific campaign operatives and offices surveilled might well justify a refusal to disclose the identity of any surveillance target(s) or other details whose disclosure would harm national security, or even a withholding of the records altogether, it does not justify a refusal to state whether records of the officially asserted acts of surveillance even exist.

Gizmodo is entitled to a response stating whether DOJ possesses any records called for by its FOIA request, including any DOJ communications with the FISA Court pertaining to surveillance during the 2016 campaign of then-candidate Trump, his associates, and his campaign offices.  This Court should reject DOJ's *Glomar* response, order DOJ to conduct a full search for responsive records, and require DOJ either to produce the responsive records with only those redactions permitted by FOIA or provide a *Vaughn* index describing the grounds for withholding records in their entirety.

---

[2] Donald J. Trump (@realDonaldTrump), Twitter (Mar. 4, 2017, 5:35 am), https://twitter.com/realdonaldtrump/status/837989835818287106.

[3] DOJ argues that the Carter Page FISA records were disclosed only due to different official acknowledgments by a congressional committee.  Def. Mem. at 6-7.

## STATEMENT OF FACTS[4]

### A.    March 2017 Presidential Disclosures

In a series of official public statements issued on March 4, 2017, President Donald Trump

disclosed the existence of previously secret law enforcement investigations involving wide-

ranging electronic and telephonic surveillance (the "Presidential Disclosures").  Specifically, the

President stated:

- Terrible!  Just found out that Obama had my 'wires tapped' in Trump Tower just
  before the victory.  Nothing found.  This is McCarthyism![5]

- Is it legal for a sitting President to be 'wire tapping' a race for president prior to an
  election?  Turned down by court earlier.  A NEW LOW![6]

- I'd bet a good lawyer could make a great case out of the fact that President Obama
  was tapping my phones in October, just prior to Election![7]

- How low has President Obama gone to tapp [sic] my phones during the very sacred
  election process.  This is Nixon/Watergate.  Bad (or sick) guy![8]

*See* Def. Mem. at 4; Decl. of G. Bradley Weinsheimer, Dkt. 22 ("Orig. Weinsheimer Decl."), ¶ 6;

*see also* Decl. of Jeremy A. Kutner, Dkt. 32 ("Kutner Decl."), Ex. 1 (Ali Vitali, *Trump's Tweets*

---

[4] Gizmodo has not submitted a Local Civil Rule 56.1 Statement in light of the "general rule in
this Circuit" that such statements are not required in FOIA litigation.  *N.Y. Times Co. v. DOJ*,
872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (citations omitted).  However, it is beyond dispute
that this Court can consider evidence beyond the pleadings, including statements from public
officials and news coverage, in evaluating a FOIA motion for summary judgment.  *See, e.g., N.Y.
Times Co. v. DOJ*, 756 F.3d 100, 110 (2d Cir. 2014); *N.Y. Times Co. v. DOJ*, 138 F. Supp. 3d
462, 477-78 (S.D.N.Y. 2015).

[5] Donald J. Trump (@realDonaldTrump), Twitter (Mar. 4, 2017, 5:35 am),
https://twitter.com/realdonaldtrump/status/837989835818287106.

[6] Donald J. Trump (@realDonaldTrump), Twitter (Mar. 4, 2017, 5:49 am),
https://twitter.com/realdonaldtrump/status/837993273679560704.

[7] Donald J. Trump (@realDonaldTrump), Twitter (Mar. 4, 2017, 5:52 am),
https://twitter.com/realdonaldtrump/status/837994257566863360.

[8] Donald J. Trump (@realDonaldTrump), Twitter (Mar. 4, 2017, 6:02 am),
https://twitter.com/realdonaldtrump/status/837996746236182529.

*'Official Statements,' Spicer Says*, NBC News (June 6, 2017) (quoting then-White House Press Secretary Sean Spicer as stating that Twitter messages posted by President Trump constitute official government statements)).[9]

The White House Press Secretary, at a press conference on March 16, 2017, explained that the Presidential Disclosures referenced, at the least, two specific surveillance operations and detailed a series of news articles and television segments published before the Presidential Disclosures that reflected what the President had officially confirmed.[10]

The President then affirmed the scope of his statements on March 15, 2017, in an interview with Tucker Carlson.  There, Carlson asked, "you tweet—the former administration wiretapped me, surveilled me at Trump Tower during the last election.  How did you find out?  You said, I just found out."  To which the President responded, "I said, wait a minute, there's lot of wiretapping being talked about. I've been seeing a lot of things. Now, for the most part, I am not going to discuss it because we have it before the committee."  When asked if he had "the ability to gather all the evidence you want" regarding these claims, the President responded, "I do. I do. But I think that frankly we have a lot right now." [11]

---

[9] On November 13, 2017, DOJ reiterated its position that the President's tweets are official government statements in a filing in a D.C. court case involving different tweets but the same prior disclosure argument.  *See* Defs.' Suppl. Submission & Further Resp. to Pls.' Post-Briefing Notices, *James Madison Project v. DOJ*, No. 17-cv-00144 (D.D.C. Nov. 13, 2017), Dkt. 29, at 4 ("[T]he government is treating the President's statements to which plaintiffs point – whether by tweet, speech or interview – as official statements of the President of the United States.").

[10] Kutner Decl., Ex. 2 ("White House Press Briefing") (Office of the Press Secretary, *Press Briefing by Press Secretary Sean Spicer, 3/16/2017, #25*).

[11] *See* Kutner Decl., Ex. 4 at 16, 18 ("Carlson Interview") (*Fox News*: *Tucker Carlson Interviews Donald Trump – March 15, 2017*, Factbase), https://factba.se/transcript/donald-trump-interview-fox-march-15-2017).

Press Secretary Spicer separately pointed to an article in *Heat Street* describing, among other surveillance, FISA warrants involving the examination of communications between a Trump computer and computers linked to two Russian banks: SVB bank and Alfa Bank.[12] Spicer cited this reporting with approval as identifying some of the campaign surveillance the President had acknowledged, and the President himself confirmed that this was activity his tweets had acknowledged.  *See* White House Press Briefing at 21-22; Carlson Interview at 16-17.

Following these acknowledgments, it was publicly disclosed that DOJ's national security component sought two specific warrants under FISA relating to the Trump campaign—one in June 2016 that was denied and one in October 2016 that was granted.  But DOJ has provided nothing to suggest that these were the only warrants sought to surveil the Trump campaign, its associates, and their activities during the campaign.

**B.      Testimony of James Comey**

FBI Director James Comey also addressed a portion of the Presidential Disclosures at a hearing before the House Permanent Select Committee on Intelligence less than three weeks after the Disclosures were made.  Using carefully circumscribed wording, Director Comey ignored the vast majority of the Disclosures and elected to state only that DOJ had "no information that supports" a distinct subset of the disclosed surveillance.  As he testified:

> With respect to the President's tweets about alleged wiretapping
> *directed at him* by the prior administration, I have no information
> that supports those tweets and we have looked carefully inside the
> FBI.  The Department of Justice has asked me to share with you
> that the answer is the same for the Department of Justice and all its

---

[12] *See* White House Press Briefing at 22; Kutner Decl., Ex. 3 (Louise Mensch, *Exclusive: FBI 'Granted FISA Warrant' Covering Trump Camp's Ties To Russia*, Heat Street (Nov. 7, 2016), https://web.archive.org/web/20170803145114/https://heatst.com/world/exclusive-fbi-granted-fisa-warrant-covering-trump-camps-ties-to-russia/ (archived version)).

> components.  The Department has no information that supports
> those tweets.

*See* Def. Mem. at 5 (emphasis added); Orig. Weinsheimer Decl. ¶ 6.

**C.    FOIA Request at Issue**

On April 6, 2017 Gizmodo filed with the National Security Division ("NSD") at DOJ a

FOIA request (the "Request") seeking:

> all information provided to or received from the FISA Court
> pertaining to requests made in 2016 for one or more warrants to
> conduct electronic surveillance on Mr. Trump, any of his
> associates, any of his properties, and/or any foreign entities
> (including, but not limited to, SVB Bank and Alfa Bank) with
> whom he or his associates were alleged to be in communication.

Orig. Weinsheimer Decl. ¶ 4.

On April 14, 2017, NSD replied with a blanket *Glomar* response, refusing to confirm or

deny the existence of any responsive records, citing FOIA Exemption (b)(1).  Orig. Weinsheimer

Decl., Ex. B.  NSD stated that confirmation or denial of the requested information would "reveal

properly classified information regarding whether particular surveillance techniques have or have

not been used by the U.S. Intelligence Community."  *Id.*  Gizmodo administratively appealed the

blanket *Glomar* response to DOJ's Office of Information Policy, and its appeal was promptly

rejected.  *Id.* at Ex. C (stating that "National Security Division properly refused to confirm or

deny the existence of any records responsive to your request because the existence or

nonexistence of any responsive records is currently and properly classified.").  This action

followed.

The Government filed its original motion for summary judgment on September 27, 2017,

in which it acknowledged that an agency cannot provide a *Glomar* response where the "existence

or non-existence" of records is officially disclosed.  DOJ Mem. in Support of First Mot. for

Summ. J., Dkt. 21 ("Orig. Def. Mem.") at 1.  The Government rightfully backed away from its

initial blanket *Glomar* response but attempted to limit the obvious breadth of the Presidential

Disclosures by relying instead on the March 20, 2017 testimony of Director Comey as the source

of official confirmation.  It argued that the Disclosures applied only to the restricted subset of

"records of alleged wiretapping of then-candidate Trump in Trump Tower by President Obama

prior to the election."  *Id.* at 4.

**D.     Declassification of the Nunes Memorandum and Page Documents**

On February 2, 2018, President Trump declassified a memorandum authored by staff for

Representative Devin Nunes, Chairman of the House Permanent Select Committee on

Intelligence, which oversees executive branch intelligence agencies and activities (the "Nunes

Memorandum").  Decl. of David A. Schulz, Dkt. 39 ("Schulz Decl."), Ex. B; *see also* Decl. of

Patrick N. Findlay, Dkt. 59 ("Findlay Decl."), ¶ 6.  The Nunes Memorandum confirmed that the

"DOJ and FBI sought and received a probable cause order" from the FISC "authorizing

electronic surveillance on Carter Page."  Schulz Decl., Ex. B, at 1.  Shortly thereafter, DOJ

disclosed heavily-redacted copies of the FISA applications and order to conduct surveillance of

Page ("Page Documents") in response to Gizmodo's Request.  *See* Findlay Decl., ¶ 7.

The declassification of the Nunes Memorandum by the President left no doubt that the

Presidential Disclosures referred more broadly to FISA warrants targeting the Trump campaign

and associated officials, further rendering DOJ's *Glomar* response unjustifiable.  Yet the

Government continues to contend that the Presidential Disclosures—and by extension, the

8

Government's FOIA obligations—are limited to wiretapping only of then-candidate Trump, in Trump Tower, as to which it says Director Comey has indicated no such records exist.[13]

## E.    Subsequent Presidential Disclosures

Both before and since disclosure of the Carter Page Documents, President Trump has issued statements demonstrating that his Presidential Disclosures are not limited to surveillance of candidate Trump in Trump Tower, but rather, encompass surveillance of the entire "Trump Campaign for President" in the months leading up the election.  Among other acknowledgements since this case was filed, the President has tweeted:

> House votes on controversial FISA ACT today.  This is the act that may have been used, with the help of the discredited and phony Dossier, to so badly surveil and abuse the Trump Campaign by the previous administration and others?[14]

> ....FISA abuse, Christopher Steele & his phony and corrupt Dossier, the Clinton Foundation, illegal surveillance of Trump Campaign, Russian collusion by Dems - and so much more.  Open up the papers & documents without redaction? Come on Jeff, you can do it, the country is waiting![15]

> "The Obama people did something that's never been done...They spied on a rival presidential campaign. Would it be OK if Trump did it next? I am losing faith that our system is on the level. I'm beginning to think it is rotten & corrupt.  Scary stuff Obama did." @TuckerCarlson  DOJ[16]

---

[13] In response to the disclosure of the Nunes Memorandum and the Government's representation that it would release the Page Documents, the Court declared the Government and Gizmodo's earlier cross-motions for summary judgment moot.  Order, Mar. 30, 2018, Dkt. 44; Def. Mem. at n. 2.  Gizmodo's Opposition and Cross-Motion for Summary Judgment address issues remaining after review of the Page Documents.

[14] Donald J. Trump (@realDonaldTrump), Twitter (Jan. 11, 2018, 6:33 am), https://twitter.com/realDonaldTrump/status/951431836030459905.

[15] Donald J. Trump (@realDonaldTrump), Twitter (Aug. 24, 2018, 5:28 am), https://twitter.com/realDonaldTrump/status/1032937718219714560; *see also* Def. Mem. at 24.

[16] Donald J. Trump (@realDonaldTrump), Twitter (Aug. 29, 2018, 7:12 am), https://twitter.com/realDonaldTrump/status/1034775835004358656.

When asked whether he would declassify any records reflecting the broad surveillance he has disclosed, the President stated:

> Well, we're looking at it very seriously right now because the things that have gone on are so bad, so bad. I mean they were surveilling my campaign.  If that happened on the other foot, they would've considered that treasonous.  They would've considered that spying at the highest level.

Daily Caller Interview at 6-7.  Shortly thereafter, the President directed the DOJ and FBI to declassify certain documents relating to this surveillance.[17]  The President expounded on this declassification order, confirming in another set of tweets that various records of the type requested by Gizmodo exist:

> I met with the DOJ concerning the declassification of various UNREDACTED documents. They agreed to release them but stated that so doing may have a perceived negative impact on the Russia probe. Also, key Allies' called to ask not to release. Therefore, the Inspector General.....[18]

> ....has been asked to review these documents on an expedited basis. I believe he will move quickly on this (and hopefully other things

---

[17] As explained in a September 17, 2018 press release from White House Press Secretary, Sarah Huckabee Sanders:

> At the request of a number of committees of Congress, and for reasons of transparency, the President has directed the Office of the Director of National Intelligence and the Department of Justice (including the FBI) to provide for the immediate declassification of the following materials: (1) pages 10-12 and 17-34 of the June 2017 application to the FISA court in the matter of Carter W. Page; (2) all FBI reports of interviews with Bruce G. Ohr prepared in connection with the Russia investigation; and (3) all FBI reports of interviews prepared in connection with all Carter Page FISA applications.

Schell Decl., Ex. 2 ("Sept. 2018 Press Release") (*Statement from the Press Secretary*, September 17, 2018), https://www.whitehouse.gov/briefings-statements/statement-press-secretary-34/.

[18] Donald J. Trump (@realDonaldTrump), Twitter (Sept. 21, 2018, 9:35 am), https://twitter.com/realDonaldTrump/status/1043146627576258561.

which he is looking at). In the end I can always declassify if it
proves necessary. Speed is very important to me - and everyone![19]

In light of the President's continued and repeated acknowledgments that surveillance was
conducted of the Trump "campaign," not just of then-candidate Trump at Trump Tower, and his
confirmations that additional documents exist beyond the Page Documents, the DOJ can no
longer justify its *Glomar* response and its continuing refusal to state whether additional
documents responsive to Gizmodo's Request even exist.

## STANDARD OF REVIEW

"[T]o prevail on a motion for summary judgment in a FOIA case, the defending agency
has the burden of showing that its search was adequate and that any withheld documents fall
within an exemption to the FOIA." *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) (citing 5
U.S.C. § 552(a)(4)(B)). "In resolving a summary judgment motion in a FOIA case, a court must
construe the statute broadly in favor of public disclosure and must construe the exemptions
narrowly. In keeping with FOIA's goal of full disclosure, all doubts should be resolved in favor
of disclosure." *Fox News Network, LLC v. Dep't of Treasury*, 739 F. Supp. 2d 515, 533
(S.D.N.Y. 2010) (citing *DOJ v. Julian*, 486 U.S. 1, 8 (1998); *Grand Cent. P'ship, Inc. v. Cuomo*,
166 F.3d 473, 478 (2d Cir. 1999)). Indeed, "disclosure, not secrecy, is the dominant objective of
the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

Critically, "[b]y statute, a district court must review *de novo* an agency's determination to
withhold information requested under the FOIA." *Florez v. CIA*, 829 F.3d 178, 182 (2d Cir.
2016). This mandate is direct and unavoidable. As the Supreme Court affirmed, "[u]nlike the
review of other agency action that must be upheld if supported by substantial evidence and not

---

[19] Donald J. Trump (@realDonaldTrump), Twitter (Sept. 21, 2018, 9:41 am),
https://twitter.com/realDonaldTrump/status/1043148165883416576.

arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter *de novo*.'"   *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). And "[i]n reviewing an Exemption 1 withholding claim, a court does not relinquish its independent responsibility to engage in *de novo* review of the agency's determinations." *N.Y. Times Co. v. DOJ*, 235 F. Supp. 3d 522, 535 (S.D.N.Y.) (internal marks and citation omitted), *appeal filed*, No. 17-2066 (2d Cir. July 5, 2017).

Applying *de novo* review, agency affidavits are accorded a presumption of good faith only where they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  An agency cannot rely on "conclusory and generalized allegations of exemptions."  *Halpern v. FBI*, 181 F.3d 279, 290 (2d Cir. 1999) (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)).

The Second Circuit mandates particular judicial scrutiny where, as here, the Government asserts a *Glomar* response refusing to confirm or deny the existence of records.  A *Glomar* response is justified "only in 'unusual circumstances, and only by a particularly persuasive affidavit.'"  *Florez*, 829 F.3d at 182 (quoting *N.Y. Times*, 756 F.3d at 122).  "'[D]eference is not equivalent to acquiescence.'"  *N.Y. Times*, 235 F. Supp. 3d at 535 (quoting *Campbell v. DOJ*, 164 F.3d 20, 30 (D.C. Cir. 1998)); *ACLU v. Office of Dir. of Nat'l Intelligence*, 2011 WL 5563520, at *5 (S.D.N.Y. Nov. 15, 2011) (same); *Azmy v. DOD*, 562 F. Supp. 2d 590, 597 (S.D.N.Y. 2008) (same).

Applying these standards, DOJ's *Glomar* response has no proper basis.

## ARGUMENT

## A *GLOMAR* RESPONSE IS UNJUSTIFIED IN LIGHT OF THE OFFICIAL ACKNOWLEDGEMENTS OF SURVEILLANCE BY THE PRESIDENT

DOJ's reflexive attempt to withhold information by issuing a *Glomar* response violates FOIA for a simple reason:  the Presidential Disclosures constitute official acknowledgement of the specific records requested by Gizmodo.  Setting aside whether specific targets, sources, or other information may be withheld, DOJ must at a minimum state whether records of the disclosed surveillance exist.

### A.    The Presidential Disclosures Specifically Acknowledge Surveillance of *Candidate Trump and His Campaign*

The Government attempts to narrow the scope of the President's acknowledgement of surveillance by pretending his disclosures concern only the direct surveillance of President Trump's own phone in his own apartment in Trump Tower.  They do not.[20]  The President acknowledged the existence of investigations involving surveillance and wiretapping of his "race for president prior to an election."  He has broadly and repeatedly acknowledged "illegal surveillance of Trump Campaign," asserting that the government had been "surveilling" his campaign and "spied on" his campaign.  *See, supra,* n. 1, 13.  The Presidential Disclosures by their own plain language encompass surveillance not just of candidate Trump, but of his campaign and Trump Tower—where the 2016 Trump Campaign and the Trump Organization both maintained offices and where both candidate Trump and his then-campaign manager Paul Manafort have apartments.

---

[20] It bears emphasis that the Court is under no obligation to give deference—substantial or otherwise—to DOJ's assertions about the meaning of the Presidential Disclosures.  Courts defer to the expertise of agencies on matters involving predictions of *harm* or *risk* associated with the release of information, not the meaning of a Presidential statement.  No amount of deference on

The Government construes the Presidential Disclosures in a ludicrously narrow manner, so it can depict the Gizmodo FOIA Request as seeking records beyond the scope of the official acknowledgment.  Gizmodo sought information pertaining to any 2016 FISA applications "for one or more warrants to conduct electronic surveillance on Mr. Trump, any of his associates, any of his properties, and/or any foreign entities."  This request seeks records of just what the President had acknowledged, *and continues to acknowledge*.  Just this month, the President again has publicly proclaimed, "they were surveilling my campaign."  Daily Caller Interview at 7.  There can be no serious question that the surveillance acknowledged by the President is not so narrowly limited as the Government contends.

**B.    DOJ Cannot Interpose a *Glomar* Response to**
**Avoid Disclosing Officially Acknowledged Information**

It is undisputed that the Presidential Disclosures constitute official public acknowledgments of national security surveillance.  DOJ's refusal to acknowledge the existence or non-existence of records relating to surveillance they disclosed—surveillance of the Trump campaign during the 2016 election—is plainly improper.

Gizmodo does not dispute that, in proper circumstances, agencies may provide a *Glomar* response and refuse to confirm or deny the existence of requested records on grounds of national security.  *See, e.g., Wilner v. NSA*, 592 F.3d 60, 68 (2d Cir. 2009).  But the availability of a *Glomar* response is strictly limited.  Such a non-response runs so obviously and directly counter to FOIA's purpose, courts in this Circuit "find a *Glomar* response justified only in 'unusual circumstances, and only by a particularly persuasive affidavit.'"  *Florez*, 829 F.3d at 182 (quoting *N.Y. Times*, 756 F.3d at 122).

---

issues of national security matters can justify a refusal to disclose information that has already

Where, as here, the information that would be disclosed by admitting the existence of responsive records has already been officially acknowledged, a *Glomar* response is entirely improper.  "The official acknowledgement doctrine prohibits agencies from 'provid[ing] a *Glomar* response when the existence or nonexistence of the particular records covered by the *Glomar* response has been officially and publicly disclosed.'"  *Florez*, 829 F.3d at 186 (citation omitted).  When evaluating a *Glomar* response in the light of an official acknowledgement, what matters is not whether the *contents* of the records have been acknowledged, but whether the *fact of the existence* of the records has been so disclosed.  *See ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013); *see also Wilner*, 592 F.3d at 70 ("If the government has admitted that a specific record exists, a government agency may not later refuse to disclose whether that same record exists or not.").

The Government does not dispute that the statements by a President serve to "officially acknowledge" information, even when conveyed in a tweet.  There is no doubt they do.  *See ACLU*, 710 F.3d at 431 (finding statement by President, among others, officially acknowledged CIA intelligence interest in drone strikes); *accord N.Y. Times*, 756 F.3d at 122 (statements by CIA Director and Secretary of Defense caused justification for *Glomar* response to "evaporat[e]").

And there is equally no doubt that the President's words at issue here disclose and acknowledge surveillance of candidate Trump and his campaign in 2016.  DOJ might be justified in withholding the names of targets of surveillance, the identity of sources or methods, or other national security information contained in warrants, affidavits, and other records responsive to Gizmodo's FOIA request.  But it may not refuse to disclose the very existence of records

---

been officially acknowledged.

15

concerning the officially acknowledged surveillance of the Trump campaign simply because the President did not also disclose specific targets, dates, and methods of that surveillance.

Rather than address whether the *existence* of the records sought by Gizmodo has been officially acknowledged, the Government misapplies the "matching" test outlined in *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009). That test is used to determine when the *substance* of particular records have been officially acknowledged by virtue of a three-part analysis.[21] But "matching and specificity criteria . . . are not applicable in the *Glomar* context; in such cases, the court must analyze only whether the prior disclosure acknowledges the existence of the records sought." *Smith v. CIA*, 246 F. Supp. 3d 28, 32 (D.D.C. 2017); *see also James Madison Project v. DOJ*, --- F. Supp. 3d ---, 2018 WL 4283562, at *5 (D.D.C. Sept. 7, 2018) ("In Glomar cases, however, a plaintiff need not show that that the actual contents of the particular records sought have been disclosed; rather they must establish that the agency has previously acknowledged the fact of the existence of responsive records.").

In *ACLU v. CIA*, for example, the D.C. Circuit considered whether official public statements regarding the CIA's participation in unmanned drone strikes rendered impermissible the agency's use of a *Glomar* response as to whether it possessed any documents related to those strikes. 710 F.3d at 430-32. Because official public statements had revealed that the agency had at least an intelligence interest in those strikes, the *Glomar* response was untenable. While the

---

[21] The Second Circuit has cast serious doubt on the practical utility of the *Wilson* test even when battling over redactions to a document rather than a document's existence. While *Wilson* "remains the law of this Circuit," the court has cautioned that "a rigid application of it may not be warranted in view of its questionable provenance." *N.Y. Times*, 756 F.3d at 120 n.19. The court further noted that official acknowledgement of the substance of documents does not require "absolute identity" between what was disclosed and the underlying records. *Id*. at 120. "[S]uch a requirement would make little sense. A FOIA requester would have little need for undisclosed information if it had to match precisely the information previously disclosed." *Id*.

16

CIA did not necessarily need to disclose the contents of its records, FOIA required it to disclose whether any records reflecting its interest in the drone strikes existed.  *Id*.  So also here, the President acknowledged the existence of national security surveillance of candidate Trump, his campaign, and campaign associates.  DOJ thus may not invoke a *Glomar* response to avoid disclosing whether records of such surveillance exist.  *See* Findlay Decl., ¶ 9.

Similarly, in *Smith*, the court found a presidential statement precluded a *Glomar* response.  246 F. Supp. 3d at 34.  In that case, the President stated, "the fact is, partly due to American military and intelligence assistance, which my administration has provided at unprecedented levels, Israel can defend itself against any conventional danger."  *Id.* at 32.  This was enough disclosure for the court to determine that the CIA could not justify a *Glomar* issued in response to a request for CIA line-item budgets detailing the amount of intelligence aid the agency provided to Israel, even though the President never specifically identified the agency providing the aid:

> President Obama's statement is sufficient to acknowledge the existence of the records sought.  The match between Plaintiff's request and President Obama's statement, although the statement did not consist of the specific words "CIA" or "budget line items," is as close as the match in *ACLU v. CIA*. . . .  President Obama's statement about United States intelligence assistance to Israel does confirm that the CIA has items in its budget pertaining to assistance to Israel.

*Id.* at 34.  In *Smith*, as here, presidential disclosures inherently revealed the existence or non-existence of the requested documents.

In light of the plain meaning of the Presidential Disclosures—as repeatedly confirmed by the President himself—DOJ's *Glomar* response is baseless and cannot properly be permitted to stand.  The Government should be ordered to conduct a full search for all responsive records and

produce them.  Whether it may seek to assert a FOIA exemption as to those records, in whole or

in part, is a question for another day.  *ACLU*, 710 F.3d at 432.  FOIA requires disclosure of the

existence or non-existence of the records requested by Gizmodo.

## CONCLUSION

For the foregoing reasons, Gizmodo respectfully asks this Court to (i) deny DOJ's motion

for summary judgment and grant Gizmodo's cross-motion for summary judgment; (ii) reject

NSD's *Glomar* response and order it to fully process the Request; (iii) order NSD to produce all

responsive documents; (iv) award Gizmodo the costs of this proceeding, including reasonable

attorney's fees, as expressly permitted by 5 U.S.C. § 552(a)(4)(E); and (v) grant such other and

further relief as the Court deems just and proper.


Dated:  New York, New York
        October 9, 2018

                              Respectfully submitted,

                              BALLARD SPAHR LLP

                              By:   */s/ David A. Schulz*
                                    David A. Schulz

                              David A. Schulz
                              Jacquelyn N. Schell
                              1675 Broadway, 19th Floor
                              New York, NY 10019
                              schulzd@ballardspahr.com
                              schellj@ballardspahr.com
                              Telephone: 212.850.6103
                              Facsimile: 212.223.1942

                              *Counsel for Plaintiff*
                              *Gizmodo Media Group, LLC*