UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
GIZMODO MEDIA GROUP, LLC,                                    :   Case No. 1:17-cv-03566 (DLC)
                                                             :
         Plaintiff,                                          :
                                                             :
   vs.                                                       :
                                                             :
DEPARTMENT OF JUSTICE,                                       :
                                                             :
         Defendant.                                          :
                                                             :
-------------------------------------------------------------X


### REPLY MEMORANDUM IN FURTHER SUPPORT OF
### PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

David A. Schulz
Jacquelyn N. Schell
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY  10022
schulzd@ballardspahr.com
schellj@ballardspahr.com
Telephone: 212.850.6103
Facsimile: 212.223.1942

*Counsel for Plaintiff*
*Gizmodo Media Group, LLC*

## PRELIMINARY STATEMENT

The issue presented by the cross-motions for summary judgment is far simpler than the Department of Justice ("DOJ") would have it:  The President of the United States has asserted that the prior administration surveilled his campaign during the 2016 election, and DOJ insists it may refuse to say whether records of any such surveillance exist.  It may not.  DOJ cannot refuse to disclose the existence or non-existence of records relating to surveillance of the 2016 Trump campaign that the President has officially acknowledged to have occurred.

DOJ does not dispute the controlling legal standard.  A *Glomar* response is not permitted where the national security information that would be revealed by confirming the existence of records has already been officially acknowledged.  Mem. in Supp. of Def.'s Mot. for Summ. J. and in Opp. to Pl.'s Cross-Mot. for Summ. J. ("DOJ Reply") at 5, Dkt. 63.  Under this standard, DOJ's partial *Glomar* response is plainly improper.  Gizmodo seeks records submitted to or received from the FISA Court in connection with any warrants sought by DOJ to surveil candidate Trump or his associates in 2016, and this is precisely the surveillance the President has officially acknowledged—loudly and repeatedly.  Mem. in Supp. of Pl.'s Cross-Mot. for Summ. J. and in Opp. to Def.'s Mot. for Summ. J. ("Gizmodo Mem.") at 7-8, 13, Dkt. 61.  Confirming the existence or non-existence of the requested records will reveal nothing more than has the President himself.

Desperate to avoid this conclusion, DOJ distorts the facts.  It argues that the President acknowledged nothing more than surveillance of candidate Trump at home in Trump Tower, and it has revealed that no records of *this* surveillance exist.  But the presidential Tweets and other statements acknowledge much more.  Their plain and intended meaning broadly asserts that surveillance was conducted of the Trump *campaign* during the 2016 election.

1

DOJ alternatively argues that its *Glomar* non-response is proper because responding to Gizmodo's request would reveal information about "specific authorized FISA warrants …to individual surveillance subjects," and such details have never been officially acknowledged. DOJ Reply at 8. While the absence of prior acknowledgement of such details might justify withholding or redacting the requested records to protect against disclosure of those details, it does not justify a refusal to disclose whether any records of campaign surveillance even exist.

This is not a trivial distinction. The President has accused his predecessor of spying on his campaign for political purposes. If true, there was an alarming violation of fundamental democratic principles by the Obama administration. If untrue, the President has misled the American people on a matter of great significance. Either way, the public has a right to know. If the President's words have no meaning, or their veracity can never be confirmed, our democracy cannot function.

The Court should reject the *Glomar* response and require DOJ to respond to Gizmodo's FOIA Request, disclose the existence of any further responsive records, and identify a proper basis for withholding any record, in whole or in part.

## ARGUMENT

### NO PROPER BASIS EXISTS FOR DOJ's *GLOMAR* RESPONSE

As framed by the cross-motions for summary judgment, the issue presented is whether the President and his subordinates have officially acknowledged the specific surveillance that is the subject of Gizmodo's FOIA Request. If so, the parties agree that DOJ's *Glomar* response must be rejected. *See* DOJ Reply at 5; Gizmodo Mem. at 11-12. As the Second Circuit has instructed, "[t]he official acknowledgement doctrine prohibits agencies from 'provid[ing] a *Glomar* response when the existence or nonexistence of the particular records covered by the *Glomar*

2

response has been officially and publicly disclosed.'" *Florez v. CIA*, 829 F.3d 178, 186 (2d Cir. 2016) (citation omitted); *see also, James Madison Project v. DOJ*, --- F. Supp. 3d ----, 2018 WL 4283562, at *5 (D.D.C. Sept. 7, 2018) (to defeat a *Glomar* response, "a plaintiff need not show that that the actual contents of the particular records sought have been disclosed; rather they must establish that the agency has previously acknowledged the fact of the existence of responsive records"). As established in the record before this Court, the President did acknowledge the specific surveillance that is the subject of Gizmodo's Request, and no proper basis exists for DOJ's partial *Glomar* response.

**A.    DOJ Disregards the Plain Meaning of the President's
        Statements About Surveillance of His Campaign**

As Gizmodo has demonstrated, the President and his administration have repeatedly claimed that his campaign for President was surveilled during the 2016 election. His ongoing stream of tweets, admitted by DOJ to constitute official statements,[1] includes clear acknowledgments of campaign surveillance, such as:

> Is it legal for a sitting President to be 'wire tapping' ***a race for president prior to an election***? . . . [2]

> [FISA Act] ***may have been used***, with the help of the discredited and phony Dossier, ***to so badly surveil and abuse the Trump Campaign by the previous administration and others***?[3]

---

[1] Kutner Decl. Ex. 1, Dkt. 32-1; *see also* Defs.' Suppl. Submission & Further Resp. to Pls.' Post-Briefing Notices at 4, *James Madison Project v. DOJ*, No. 1:17-cv-00144-APM (D.D.C. Nov. 13, 2017), Dkt. 29 ("[T]he government is treating the President's statements to which plaintiffs point – whether by tweet, speech or interview – as official statements of the President of the United States.").

[2] Donald J. Trump (@realDonaldTrump), Twitter (Mar. 4, 2017, 5:49 am), https://twitter.com/realdonaldtrump/status/837993273679560704 (emphasis added).

[3] Donald J. Trump (@realDonaldTrump), Twitter (Jan. 11, 2018, 6:33 am), https://twitter.com/realDonaldTrump/status/951431836030459905 (emphasis added).

3

> FISA abuse, Christopher Steele & his phony and corrupt Dossier, the Clinton Foundation, ***illegal surveillance of Trump Campaign***, Russian collusion by Dems - and so much more.  Open up the papers & documents without redaction? Come on Jeff, you can do it, the country is waiting![4]
>
> "***The Obama people*** did something that's never been done...They ***spied on a rival presidential campaign***. . . ."[5]
>
> I mean ***they were surveilling my campaign***.[6]

DOJ spends much of its reply fighting the plain meaning of these disclosures, discarding the President's words in favor of more circumspect statements by FBI Director Comey and narrower disclosures in the Nunes Memo and Page Document.  DOJ Reply at 4-5.  It also cherry-picks isolated presidential references to "Trump Tower" and "my phones" as somehow cabining the broad and intended meaning of the President's other acknowledgements.  *Id.* at 5; Mem. in Supp. of Def.'s Mot. for Summ. J. ("DOJ Mem."), at 20, Dkt. 58.  But the President's own words have clear meanings.  They identify surveillance in 2016 of "the Trump Campaign" and the "race for president"—phrases that encompass far more than just surveillance of the candidate himself, only while in his New York home.

DOJ attempts to undermine the meanings of individual presidential statements, but its effort is unavailing.  DOJ highlights, for example, that one tweet was in the form of a question, DOJ Mem. at 22-23, but disregards the many declarative statements to the effect that "they were surveilling my campaign."  *See* Daily Caller Interview at 6-7.  DOJ notes that many presidential statements made no "specific reference to FISA or the FISC, let alone applications made to the

---

[4] Donald J. Trump (@realDonaldTrump), Twitter (Aug. 24, 2018, 5:28 am), https://twitter.com/realDonaldTrump/status/1032937718219714560; *see also* Def. Mem. at 24.

[5] Donald J. Trump (@realDonaldTrump), Twitter (Aug. 29, 2018, 7:12 am), https://twitter.com/realDonaldTrump/status/1034775835004358656 (emphasis added).

4

FISC in 2016 for authorization to conduct surveillance," DOJ Reply at 5, but ignores the President's tweets that do expressly reference warrants obtained from the FISA court. *See supra*, p. 3 fn. 2, 3. And DOJ dismisses the President's declassification order because it only references documents relating to the now disclosed Carter Page warrants, DOJ Reply at 7-8, but elides the many, broader presidential references to surveillance that are not limited to Carter Page. *See* Gizmodo Mem. at 1-6, 8-11.

DOJ is on no more solid ground in noting that some of the President's statements quote news reports or in citing decisions holding that disclosures made by the press and reactions of officials to press reports are not "official disclosure[s]." DOJ Reply at 6-7. *See Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009) (ruling that press reports about individual's prior employment with CIA were not official statements by CIA); *James Madison Project*, 2018 WL 4283562, at *38-39 (ruling that statements responding to a press report and speculating about the source of leaked documents were not official statements).[7] None of these cases, however, involved government officials expressly endorsing and adopting the truth of published accounts, as happened here. While anonymously-sourced news stories may not themselves constitute official disclosures, the President and other officials in this case cited, quoted, and publicly approved of published reports of campaign surveillance, and used the press accounts to bolster the veracity of other independently-made official statements. *See* Kutner Decl. Ex. 1, 3.

---

[6] Decl. of J. Schell Ex. 1 ("Daily Caller Interview") at 6-7, Dkt. 62-1.

[7] Other cases cited by DOJ for this point do not involve press reports. *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (cited in DOJ Reply at 6) (considering disclosure of executive branch documents by Congress, without reference to press reports); *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (cited in DOJ Reply at 6) (referencing difference between official acknowledgements and "public speculation" and rejecting *Glomar* response in light of official acknowledgements).

DOJ simply cannot deny the broad campaign surveillance described by the President. Those disclosures constitute official acknowledgment of the surveillance activity. *See* Gizmodo Mem. at 13-14.

**B.     The Scope of Gizmodo's Request Matches the
        Scope of the President's Acknowledgements**

DOJ mischaracterizes the Gizmodo Request in claiming that it does not seek information that matches the information disclosed by the President. DOJ describes the Request as seeking "the existence or non-existence of specific authorized FISA warrants as to individual surveillance subjects" and then underscores that details about individual surveillance subjects "have not been disclosed in any of the non-specific statements referenced throughout Plaintiff's brief." DOJ Reply at 8. Actually, the Request asks for any records of the surveillance program the President specifically described—records from 2016 relating to "one or more warrants to conduct electronic surveillance on Mr. Trump, any of his associates, any of his properties, and/or any foreign entities . . . with whom he or his associates were alleged to be in communication." Decl. of G. Weinsheimer ("Orig. Weinsheimer Decl.") ¶ 4, Dkt. 22. While DOJ might be able to withhold never-acknowledged details of the surveillance, it cannot refuse to disclose the existence or non-existence of records relating to the acknowledged surveillance.

This conclusion is compelled by the holdings in *ACLU v. CIA* and *Smith v. CIA*, which DOJ is unable to distinguish. In *ACLU v. CIA*, the President and other administration officials acknowledged the United States' participation in drone strikes, and the ACLU thereafter sought records relating to the CIA's interest in those strikes. 710 F.3d 422 (D.C. Cir. 2013). Because there had been no acknowledgement that the CIA specifically had conducted drone strikes, the

6

CIA interposed a *Glomar* response, claiming it would damage national security to state whether the CIA possessed any records reflecting a CIA interest in the strikes. *Id.* at 425-26.

The *ACLU* court rejected that *Glomar* response. It held that official acknowledgement of U.S. drone strikes and the CIA's officially acknowledged role in intelligence operations rendered a *Glomar* response untenable. Admitting the existence of records reflecting a CIA "intelligence interest" in drone strikes would not reveal anything that was not already effectively disclosed. The CIA's *Glomar* response "asked the courts to stretch that doctrine too far—to give their imprimatur to a fiction of deniability that no reasonable person would regard as plausible." *Id.* at 431.

So, too, in *Smith v. CIA*, 246 F. Supp. 3d 28, 33 (D.D.C. 2017), the government's *Glomar* response was rejected because it was "neither logical nor plausible" in light of official disclosures. There, President Obama had stated that "due to American military and intelligence assistance, which my administration has provided at unprecedented levels, Israel can defend itself against any conventional danger," and based on this statement, plaintiff sought records regarding the line items in the CIA's budget relating to Israel. *Id.* at 32. The government argued that a *Glomar* response was proper because the President had neither referenced the CIA as the specific source of the "American military and intelligence assistance" nor specifically disclosed the existence of "budget line items" for the assistance. The Court rejected the argument. The CIA was the logical source for "intelligence" aid and any support would necessarily have a cost and therefore a line item. *Id.* at 33-34. A *Glomar* response was not proper because disclosing the existence or non-existence of the requested records would not plausibly reveal anything not already officially acknowledged. *See id.* at 32 (in assessing a *Glomar* response "the court must analyze only whether the prior disclosure acknowledges the existence of the records sought").

7

So too here, the government's *Glomar* is not proper because disclosing the existence or non-existence of the requested records would not reveal any information not already officially acknowledged by the President himself.  The President has repeatedly stated that there was surveillance of his campaign, involving the Foreign Intelligence Surveillance Court, and based on his statements there must necessarily be "documents relating to … warrants to conduct electronic surveillance on Mr. Trump, any of his associates, any of his properties, and/or any foreign entities … with whom he or his associates were alleged to be in communication."  Orig. Weinsheimer Decl. ¶ 4.  Disclosing whether any records exist that are responsive to the Gizmodo Request, as FOIA otherwise requires DOJ to do, will reveal nothing new.

DOJ has no answer to this precedent, and the cases it cites are inapposite.  In *Wilner v. NSA*, the government officially acknowledged the existence of the Terrorist Surveillance Program ("TSP"), but the FOIA request sought records showing whether, under the TSP, NSA had surveilled specific individuals, for whom TSP surveillance had never been acknowledged. 592 F.3d 60, 64-65 (2d Cir. 2009).  In *Moore v. CIA*, the FBI produced documents relating to the plaintiff's father, which the CIA had redacted.  The court rejected plaintiff's argument that these redactions constituted a CIA admission that it had documents relating to his father because plaintiff could not show the redactions related to the father, as opposed to some other national security information.  666 F.3d 1330, 1334 (D.C. Cir. 2011).  Both cases allowed a *Glomar* response because disclosing the existence of responsive records would necessarily reveal national security information not already officially acknowledged.  That is not true here.

Because the Gizmodo Request matches the President's official acknowledgment, a *Glomar* response is not proper.

**CONCLUSION**

For the foregoing reasons and the reasons set forth in Gizmodo's initial memorandum in support of its cross-motion for summary judgment, this Court should (i) deny DOJ's motion for summary judgment and grant Gizmodo's cross-motion for summary judgment; (ii) reject NSD's *Glomar* response and order it to fully process the Request; (iii) order NSD to produce all responsive documents; (iv) award Gizmodo the costs of this proceeding, including reasonable attorney's fees, as expressly permitted by 5 U.S.C. § 552(a)(4)(E); and (v) grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 16, 2018

Respectfully submitted,

BALLARD SPAHR LLP

By: */s/ David A. Schulz*
       David A. Schulz

David A. Schulz
Jacquelyn N. Schell
1675 Broadway, 19th Floor
New York, NY 10019
schulzd@ballardspahr.com
schellj@ballardspahr.com
Telephone: 212.850.6103
Facsimile: 212.223.1942

*Counsel for Plaintiff*
*Gizmodo Media Group, LLC*