```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :        17cv3566 (DLC)
GIZMODO MEDIA GROUP, LLC,                :
                                         :        OPINION AND
                    Plaintiff,           :           ORDER
                                         :
           -v-                           :
                                         :
DEPARTMENT OF JUSTICE,                   :
                    Defendant.           :
                                         :
---------------------------------------- X
```

APPEARANCES:

For the Plaintiff:
David A. Schulz
Jacquelyn Nicole Schell
Ballard Spahr LLP
1675 Broadway, 19th Floor
New York, NY 10019

For the Defendant:
Andrew Edward Krause
United States Attorney's Office, SDNY
86 Chambers Street, 3rd Floor
New York, NY 10007

DENISE COTE, District Judge:

Plaintiff Gizmodo Media Group, LLC ("Gizmodo") has filed suit against the Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA") to compel production of records related to alleged wiretaps of the 2016 Trump Campaign ("Trump Campaign") leading up to the presidential election. The question presented by this action is whether the Government has publicly acknowledged the existence of the classified information sought by Gizmodo. If it has, then the Government

1

has lost the right to withhold acknowledgment of the existence or non-existence of the requested documents. For the reasons that follow, the DOJ's motion for summary judgment is granted.

**Background**

The following facts are undisputed and provide relevant background for the FOIA request and the Government's response to that request. On March 3, 2017, Breitbart News published an article describing alleged wiretapping of the Trump Campaign by the Obama Administration. The article included a timeline of alleged actions, including a June 2016 Foreign Intelligence Surveillance Act ("FISA") request to monitor the Trump Campaign that was denied and an October 2016 FISA request that was granted.

On March 4, President Trump posted a four-part tweet on his Twitter account @realDonaldTrump. These tweets read as follows:

> [1]Terrible! Just found out that Obama had my "wires tapped" in Trump Tower just before the victory. Nothing found. This is McCarthyism!
>
> [2] Is it legal for a sitting President to be "wire tapping" a race for president prior to an election? Turned down by court earlier. A NEW LOW!
>
> [3] I'd bet a good lawyer could make a great case out of the fact that President Obama was tapping my phones in October, just prior to Election!
>
> [4] How low has President Obama gone to tapp [sic] my phones during the very sacred election process. This is Nixon/Watergate. Bad (or sick) guy!

(Emphasis supplied.)

In a Fox News interview with Tucker Carlson ("Carlson") on March 15, President Trump discussed these tweets. When asked by Carlson how he found out about the alleged wiretapping, President Trump responded:

> Well, I had been reading about things. I read in, I think it was January 28th, a New York Times article where they were talking about wiretapping. There was an article, I think they used that exact term it [sic]. I read other things. I watched your friend Bret Baier, the day previous where he was talking about certain, very complex sets of things happening and wiretapping. I said, wait a minute, there's lot [sic] of wiretapping being talked about. I've been seeing a lot of things. Now, for the most part, I am not going to discuss it because we have it before the committee.¹ And we will be submitting things before the committee very soon that has [sic] not been submitted as of yet.

When asked by Carlson why he did not gather evidence of the wiretapping from intelligence agencies, President Trump stated, among other things, that "we will be submitting certain things and I will be perhaps speaking about this next week but it is right now before the committee and I think I want to leave it there." When Carlson asked "[w]hy not wait to tweet about it until you can prove it?" President Trump responded "[w]ell, because The New York Times wrote about it. You know? . . .

---

¹ The reference to the committee is understood to be a reference to the House Permanent Select Committee on Intelligence.

They're using the word wiretapped. Other people have come out with --."

On March 16, during a White House press briefing, when asked about the alleged wiretapping and Trump's statements about it, then-Press Secretary Sean Spicer ("Spicer") recounted information that had been reported by a variety of news outlets regarding alleged surveillance of the Trump Campaign by the Obama Administration. After quoting from several news articles, Spicer concluded:

> The bottom line is, is that the President said last night that he will be -- that there will be additional information coming forward. There's a ton of media reports out there that indicate that something was going on during the [2016] election.

When one journalist at the press briefing stated to Spicer, that "[i]t sounds like your information is news reports, not evidence, not conversations with the FBI Director," Spicer responded:

> No, no, what -- I think the President addressed that last night. He said there's more to come. These are merely pointing out that I think there is widespread reporting that throughout the 2016 election there was surveillance that was done on a variety of people that came up.

And in response to the same journalist's question about whether President Trump was "asking, himself, for the intelligence agencies that report to him, to provide him specific answers to

these underlying questions that are separate from the reports you're citing," Spicer responded "[n]o."

On March 20, then-Federal Bureau of Investigation ("FBI") Director James Comey ("FBI Director") was asked during sworn testimony before the House Permanent Select Committee on Intelligence ("HPSCI") about the March 4 tweets. He responded:

> With respect to the President's <u>tweets about alleged wiretapping directed at him</u> by the prior administration, I have no information that supports those tweets and we have looked carefully inside the FBI. The Department of Justice has asked me to share with you that the answer is the same for the Department of Justice and all its components. <u>The Department has no information that supports those tweets</u>.

(Emphasis supplied.)

On April 6, Gizmodo submitted a FOIA request to DOJ's National Security Division ("NSD"). This request seeks

> all information provided to or received from the FISA Court pertaining to requests made in 2016 for one or more warrants to conduct electronic surveillance on Mr. Trump, any of his associates, any of his properties and/or any foreign entities (including but not limited to, SVB Bank and Alfa Bank) with whom he or his associates were alleged to be in communication.

The request cited President Trump's March 4 tweets as public disclosures that "he and/or his associates" had been a target of electronic surveillance during the 2016 Presidential Campaign. It argued that the tweets had confirmed the published report by <u>Breitbart News</u> on March 3 that a FISA warrant had at first been denied in June 2016 but then granted in October 2016.

The NSD responded by email to this request on April 14, with a Glomar response, refusing to confirm or deny the existence of responsive records. The NSD invoked FOIA Exemption 1, explaining that the NSD does not search for records in response to requests regarding the use or non-use of certain foreign intelligence gathering techniques where the confirmation or denial of the existence of responsive records would, in and of itself, reveal information properly classified under Executive Order 13526. Gizmodo appealed the NSD's response that same day to the DOJ's Office of Information Policy ("OIP"), the office responsible for deciding DOJ FOIA appeals, and on April 18, the OIP affirmed the NSD's determination. Gizmodo filed this lawsuit on May 12, 2017.

On February 2, 2018, President Trump declassified the entirety of a January 18, 2018 memorandum authored by Representative Devin Nunes, Chairman of the HPSCI, entitled "Foreign Intelligence Surveillance Act Abuses at the Department of Justice and the Federal Bureau of Investigation" ("the Nunes Memorandum"). This memorandum stated, among other things, that in October 2016 the "DOJ and FBI sought and received a FISA probable cause order . . . authorizing electronic surveillance on Carter Page." Page was identified "as a volunteer advisor to the Trump presidential campaign." Approximately three weeks later, an unclassified, redacted version of a January 29, 2018

memorandum prepared by the HPSCI Minority entitled "Correcting the Record – The Russia Investigation, from the House Permanent Select Committee on Intelligence Minority, to All Members of the House of Representatives" was released.  This memorandum also discussed the existence of FISA applications and orders to conduct surveillance of Page.

On July 20, in response to FOIA requests in this and other cases, the DOJ disclosed redacted copies of the FISA applications and order to conduct surveillance of Page.  The released records disclosed a FISA application for surveillance of Page in October 2016 and several renewal applications, the last of which was submitted in June 2017.  According to DOJ, this was the first ever official public disclosure of an application to or order by the FISA Court pertaining to a specific individual surveillance target.

Since the filing of this lawsuit, President Trump has issued several tweets that reference surveillance of the Trump Campaign.  On January 11, 2018, President Trump tweeted:

> House votes on controversial FISA ACT today.  This is the act that may have been used, with the help of the discredited and phony Dossier, to so badly surveil and abuse the Trump Campaign by the previous administration and others?[2]

---

[2] The reference to a Dossier is understood to be a reference to a document authored by Christopher Steele concerning among other things President Trump's alleged ties to Russia and published by BuzzFeed in January 2017.

7

On August 24, President Trump tweeted:

> FISA abuse, Christopher Steele & his phony and corrupt Dossier, the Clinton Foundation, illegal surveillance of Trump Campaign, Russian collusion by Dems – and so much more. Open up the papers & documents without redaction? Come on Jeff, you can do it, the country is waiting![3]

On August 29, President Trump tweeted "'The Obama people did something that's never been done. . . . They spied on a rival presidential campaign.'"

Another tweet followed a September 17 White House statement. That statement disclosed that President Trump had directed the Office of the Director of National Intelligence and DOJ to declassify certain documents.[4] On September 21, President Trump tweeted

> I met with the DOJ concerning the declassification of various UNREDACTED documents. They agreed to release them but stated that so doing may have a perceived negative impact on the Russia probe. Also, key

---

[3] The reference to the Clinton Foundation is understood to be either a reference to the non-profit organization named the Clinton Foundation founded by former President Bill Clinton or to the Clinton Family Foundation, Bill and Hillary Rodham Clinton's private charitable foundation. Hillary Rodham Clinton was the nominee of the Democratic Party for the Office of President in 2016. The reference to Jeff is understood to refer to Jeff Sessions, then Attorney General.

[4] The documents to be disclosed included pages of the June 2017 application to the FISA court regarding Page (which was the final of four applications for surveillance of Page), all FBI reports of interviews prepared in connection with all Page FISA applications, and certain other FBI reports related to investigations related to Russia.

> Allies' called to ask not to release. Therefore, the
> Inspector General . . . has been asked to review these
> documents on an expedited basis. I believe he will
> move quickly on this (and hopefully other things which
> he is looking at). In the end I can always declassify
> if it proves necessary.

President Trump later reversed course, and the documents were not declassified.

## Procedural History

As noted, Gizmodo filed this lawsuit on May 12, 2017. On September 27, 2017, DOJ filed a motion for summary judgment in this case and on November 14, Gizmodo filed a cross-motion for summary judgment. Those motions were terminated as moot on March 30, 2018, after DOJ represented that its responses to Gizmodo's FOIA request would change in light of the declassification of the Nunes Memorandum.

DOJ filed the instant motion for summary judgment on September 14, 2018 and Gizmodo filed its cross-motion for summary judgment on October 9. The motions were fully submitted on November 16.[5]

---

[5] Several cases seeking similar records through FOIA requests have also been filed by other plaintiffs in other courts. See, e.g., Poulsen v. Department of Defense et al, 17cv3531 (N.D. Cal. filed June 19, 2017); James Madison Project v. Department of Justice, 17cv597 (D.D.C. filed April 4, 2017). On March 22, 2019, an opinion issued in Poulsen, granted the Government's motions for summary judgment and found, inter alia that the President's tweets did not disclose the existence of the specific documents requested and that the Government agencies

9

**Discussion**

FOIA was enacted in 1966 "to improve public access to information held by government agencies." Pierce & Stevens Chem. Corp. v. U.S. Consumer Prod. Safety Comm'n, 585 F.2d 1382, 1384 (2d Cir. 1972). It "expresses a public policy in favor of disclosure so that the public might see what activities federal agencies are engaged in." A. Michael's Piano, Inc. v. F.T.C., 18 F.3d 138, 143 (2d Cir. 1994). "FOIA generally calls for broad disclosure of Government records." Am. Civil Liberties Union v. United States Dep't of Def., 901 F.3d 125, 133 (2d Cir. 2018), as amended (Aug. 22, 2018) (citation omitted)("ACLU v. DOD"). FOIA requires a federal agency to disclose records in its possession unless they fall under one of nine enumerated and exclusive exemptions. 5 U.S.C. § 552(a)(3)-(b). The statutory exemptions "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." Dep't of the Interior and Bur. of Indian Affairs v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (citation omitted). The exemptions are thus to be "given a narrow compass." Id. (citation omitted).

---

could maintain Glomar responses as to forms of electronic surveillance and targets of electronic surveillance undisclosed by the Government's acknowledgment of the use of electronic surveillance on Page. Poulsen v. Dep't of Def., No. 17cv3531, 2019 WL 1318380 (N.D. Cal. Mar. 22, 2019).

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994). "An agency may carry its burden by submitting declarations giving reasonably detailed explanations why any withheld documents fall within an exemption, and such declarations are accorded a presumption of good faith." Florez v. Cent. Intelligence Agency, 829 F.3d 178, 182 (2d Cir. 2016) (citation omitted).

> Summary judgment is appropriate where the agency declarations describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record or by evidence of agency bad faith.

ACLU v. DOD, 901 F.3d at 133 (citation omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." New York Times Co. v. U.S. Dep't of Justice, 756 F.3d 100, 119 (2d Cir.), opinion amended on denial of reh'g, 758 F.3d 436 (2d Cir.), supplemented, 762 F.3d 233 (2d Cir. 2014) (citation omitted). Because of "FOIA's general principle of broad disclosure of government records . . . all doubts as to the applicability of the exemption must be resolved in favor of disclosure." Ctr. for Constitutional Rights v. CIA, 765 F.3d 161, 166 (2d Cir.

11

2014), cert. denied, 135 S.Ct. 1530 (2015) (citation omitted). A court "review[s] the adequacy of the agency's justifications de novo. In the national security context, however, we must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." Am. Civil Liberties Union v. Dep't of Justice, 681 F.3d 61, 69 (2d Cir. 2012) (citation omitted).

FOIA Exemption 1, which the DOJ invokes in this case to justify its Glomar response, exempts from disclosure "records that are specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy, and are in fact properly classified pursuant to such Executive order." Ctr. for Constitutional Rights, 765 F.3d at 166 (quoting 5 U.S.C. § 552(b)(1)). Executive Order 13,526 permits classification of information that, if disclosed, "reasonably could be expected to result in damage to the national security" and requires that "the original classification authority is able to identify or describe the damage." Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009). This executive order explicitly permits a classifying agency to "refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors." Id. § 3.6(a).

12

The term "Glomar response" refers to "a response that neither confirms nor denies the existence of documents responsive to the request." Ctr. for Constitutional Rights, 765 F.3d at 164 n.5. A Glomar response is "justified only in unusual circumstances, and only by a particularly persuasive affidavit." Florez, 829 F.3d at 182.

An agency is "precluded from making a Glomar response if the existence or nonexistence of the specific records sought by the FOIA request has been the subject of an official public acknowledgment." Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 70 (2d Cir. 2009). "Classified information . . . is deemed to have been officially disclosed only if it (1) is as specific as the information previously released, (2) matches the information previously disclosed, and (3) was made public through an official and documented disclosure." Wilson v. C.I.A., 586 F.3d 171, 186 (2d Cir. 2009) (citation omitted). While noting that this test "remains the law of this Circuit," the Second Circuit has since expressed concerns about the "questionable provenance" of the Wilson test and cautioned "that a rigid application of it may not be warranted." New York Times Co., 756 F.3d at 120 n.19.

In applying the Wilson test to determine whether an official statement precludes the Government from issuing a Glomar response, "absolute identity" between the information

13

requested and disclosed is not required.  Id. at 120.  "Indeed, such a requirement would make little sense.  A FOIA requester would have little need for undisclosed information if it had to match precisely information previously disclosed."  Id. Moreover, in the Glomar context, it is disclosure of the existence of the specific records requested, rather than their contents, that is the subject of the inquiry.  "If the government has admitted that a specific record exists, a government agency may not later refuse to disclose whether that same record exists or not."  Wilner, 592 F.3d at 70.  See also Am. Civil Liberties Union v. C.I.A., 710 F.3d 422, 427 (D.C. Cir. 2013) ("In the Glomar context, the specific information at issue is not the contents of a particular record, but rather the existence vel non of any records responsive to the FOIA request." (citation omitted)) ("ACLU v. CIA").

This Court finds, and there is no dispute, that the information Gizmodo requests regarding FISA Court applications and orders is classified information that is properly subject to Exemption 1 and a Glomar response if the existence of the records sought by Gizmodo has not already been made public through an official disclosure.  Both parties also agree that each of the statements recited above by President Trump, including his tweets, and by the FBI Director are "official" public statements for purposes of analyzing whether a Glomar

14

response may be given to the Gizmodo FOIA request. The FBI Director has acknowledged on behalf of DOJ that the Government has no records of wiretapping "directed at" then-candidate Trump by the Obama Administration. Through the declassification of the Nunez Memorandum, the Government has acknowledged the existence of FISA applications and orders to conduct surveillance of Page. Documents related to the Page surveillance were later released to the public.

The only issue remaining in this case is the propriety of the DOJ's blanket Glomar response as to any remaining category of documents in Gizmodo's FOIA request. In light of the disclosures already made by the Government, Gizmodo takes the position in its final brief in support of its cross-motion for summary judgment that a Glomar response is still inappropriate for one category of documents. That category is documents of any DOJ efforts to obtain FISA warrants for then-candidate Trump's "associates in 2016" who were involved in his Campaign for President. Gizmodo contends that President Trump's tweets prevent the Government from invoking a Glomar response to that remaining request.

President Trump's tweets were too vague to foreclose a Glomar response to this remaining category of requests. President Trump discussed surveillance of his Campaign in broad strokes. He did not refer to any targets of this surveillance

15

apart from himself, or to any number of targets.  His statements do not disclose the existence of records of surveillance of any specific individual associated with his Campaign.  His statements may be fairly interpreted to refer only to the surveillance of himself or Page; nothing in the statements clearly indicates that the surveillance was not so limited. While official statements need not name any additional individuals or otherwise reveal a person's identity to render a Glomar response inappropriate, the statements must more concretely indicate the existence of the specific records sought in order to satisfy the Wilson test.  With the disclosure that surveillance did occur of Page, who worked with the Trump Campaign, and with the disclosure that candidate Trump was not the target of such surveillance, there is no bar to the Government invoking a Glomar response with respect to a FOIA request seeking records of surveillance of all other individuals associated with the Trump Campaign in 2016.

    This outcome is consistent with the Court of Appeals recent decision in Wilner.  There, the Second Circuit held that an agency may provide a Glomar response despite the fact that the existence of the program about which a plaintiff sought records -- the Terrorist Surveillance Program -- had been disclosed. "An agency only loses its ability to provide a Glomar response when the existence or nonexistence of the particular records

16

covered by the Glomar response has been officially and publicly disclosed." Wilner, 592 F.3d at 70.

Gizmodo's reliance on ACLU v. CIA, 710 F.3d 422, is misplaced. In ACLU v. CIA, the Court of Appeals rejected a Glomar response offered to resist revealing not whether the Government as a whole had records concerning a drone program, but whether one agency -- the CIA -- had an interest in that program. Id. at 428, 431. There was no dispute that the Government had officially disclosed the existence of a drone program against al Qaeda. Id. at 429. In rejecting the Glomar response, the court found that the Government had also disclosed the CIA's own particular interest in the program. Id. at 430. Here, there is no issue about any particular agency's refusal to reveal its participation in a publicly disclosed program, and, under Wilson, there has been no official disclosure of the existence or non-existence of additional records responsive to Gizmodo's request.

## Conclusion

DOJ's summary judgment motion of September 14, 2018 is granted. Gizmodo's summary judgment motion of October 9, 2018

17

is denied.  The Clerk of Court shall enter judgment for the Government and close the case.

Dated:   New York, New York
         April 3, 2019

                                    _____
                                           DENISE COTE
                                    United States District Judge